UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,                         Case Number 19-20840

v.                                            Honorable David M. Lawson

ASHLEY TOWNSEND,

              Defendant.

_____/

## OPINION AND ORDER DENYING JOINT MOTION
## TO ACCEPT PLEA AGREEMENT

In the summer of last year, in the midst of a global pandemic that closed the courthouses in this district and halted jury trials for months, the United States Attorney adopted a policy that radically altered customary local practice by requiring as a condition of all plea agreements under Federal Rule of Criminal Procedure 11(c) that every defendant waive all rights to appeal any aspect of the proceedings and forfeit most post-conviction rights. The government seeks to apply this stringent policy in the present case, in which it charged the defendant with a constellation of crimes that will mandate a minimum prison sentence of 20 years if the defendant is convicted on all counts. The Court expressed concern over the blanket appeal waivers, which serve to embargo consequential judicial and advocate mistakes and to insulate the government's conduct from judicial oversight, and advised that it was not inclined to accept the plea agreement as contrary to the interests of justice. In response, the parties presented a joint motion to accept a proposed plea agreement in which the government would dismiss charges and penalty enhancements, thereby reducing the mandatory minimum prison sentence to 10 years (although it intends to recommend a sentence of 25 years). However, the government has failed to identify any discernible substantial criminal justice interest that is achieved by the overly broad waivers on which it insists. And the

waivers as framed are contrary to the public interest in the fair administration of justice, because they purport entirely to insulate the conduct of the executive branch in this prosecution from any form of judicial review, consistent with the practice adopted by the Department of Justice's former leadership of resisting all reasonable oversight by a concomitant branch of government.   The motion will be denied.

I.

Ashley Townsend is charged in a four-count superseding indictment with a violation of the Armed Career Criminal Act ("ACCA") (Count One), two counts of possession with intent to distribute controlled substances (Counts Two and Three), and one count of possessing firearms in furtherance of the crimes charged in Counts Two and Three (Count Four).   Three of those charges subject Townsend to mandatory prison sentences.   The ACCA charge carries a mandatory minimum sentence of 15 years.   One of the two drug charges (Count Three) normally would carry a mandatory minimum sentence of five years, but because the government has filed a prior felony information under 21 U.S.C. § 851, that minimum sentence is doubled to ten years.   Finally, Count Four carries a mandatory minimum sentence of five years, which must run consecutively to any other sentences imposed.   Altogether, if Townsend were convicted at trial on all charges, he would face a minimum aggregate prison term of 20 years.   His maximum exposure is life in prison.

The parties have presented a proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(A) and (B) in which Townsend agrees to plead guilty to Counts Three and Four, and the government agrees to dismiss Counts One and Two and withdraw the prior felony information.   The agreement thus lowers the effective mandatory minimum term for the remaining charges to an aggregate of 10 years.   The agreement also states the parties' concurrence that

Townsend is classified as a career offender within the meaning of U.S.S.G. § 4B1.1(a), and the government's recommendation that the total sentence imposed should not exceed 25 years.

The agreement includes broad waivers of the defendant's rights to challenge his convictions and sentences by direct appeal and on collateral review. The waivers state as follows:

> 12. Appeal Waiver. The defendant waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed 300 months, the defendant also waives any right he may have to appeal his sentence on any grounds.
>
> 13. Collateral Review Waiver. The defendant retains the right to raise claims alleging ineffective assistance of counsel, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255, 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

Proposed Plea Agrmt., ECF No. 36-3, PageID.149-50. The Court has not discussed the proposed plea agreement with the parties, other than expressing concern on the record over the appeal waiver provisions. Nor has the Court discussed the charges, the strength of the government's evidence, or any other aspect of the case. The trial has been adjourned due to the pandemic that has closed the courthouses in this district since last March and has curtailed in-person proceedings since then.

The parties argue in their joint motion that (1) although the Court has discretion to accept or reject a plea agreement, it must articulate "sound reasons" for rejection, which may not be premised merely on blanket disapproval of certain types of provisions, (2) rejection of the agreement would comprise improper judicial participation in plea bargaining, due to the Court's expressed disapproval of certain terms, which effectively amounts to a judicial imperative to rewrite those terms, (3) the defendant would suffer "extreme prejudice" if the agreement is rejected because he would be forced to proceed to trial facing double the mandatory sentence that he would

otherwise, and (4) it is well settled in this Circuit that appellate waivers are valid and enforceable, and the "finality" afforded by the waiver here is reasonable consideration for the concessions that the government has offered by agreeing to dismiss charges with substantial additional penalties.

Because of the questionable validity of some of these arguments, and in the absence of adversarial testing due to the joint nature of the motion, the Court appointed the Honorable John Gleeson, retired United States District Judge for the Southern District of New York, to file a response as *amicus curiae*. Judge Gleeson has performed admirably, and the Court thanks him for his work.

II.

When a plea agreement contemplates dismissal of charges, it is governed by Federal Rule of Criminal Procedure 11(c)(1)(A), which states that, upon consideration, the Court "may accept the agreement, reject it, or defer a decision until [it] has reviewed the presentence report." Rule 11 sets forth specific procedures and requirements for receiving and evaluating guilty pleas. But it "does not establish criteria to guide a district court's discretion with respect to accepting or rejecting a plea agreement." *United States v. Walker*, 922 F.3d 239, 249 (4th Cir. 2019), *cert. granted and judgment vacated on other grounds*, *Walker v. United States*, 140 S. Ct. 474 (2019). A criminal defendant "has no absolute right to have a guilty plea accepted." *United States v. Moore*, 916 F.2d 1131, 1135-36 (6th Cir. 1990). But the "court must exercise sound discretion in determining whether or not to reject a plea." *Ibid.* A defendant undoubtedly has a right "to plead guilty," and "the district court [must] articulate a sound reason for rejecting the plea." *Ibid.*

Beyond a guilty plea itself, however, it is well established that "district courts have broad discretion in deciding whether or not to accept a plea agreement," as the parties acknowledge. *Id.* at 1135 (citing *Santobello v. New York,* 404 U.S. 257, 262 (1971)). That discretion, of course, is

not unbridled.  Instead, when considering whether to accept or reject a plea agreement, the district court must reach a "rational decision" based on "all relevant factors."  *United States v. Cota-Luna*, 891 F.3d 639, 648 (6th Cir. 2018).  And it is generally held that "district courts 'must set forth, on the record, both the prosecutor's reasons for framing the [charge] bargain as he did and the court's justification for rejecting the bargain.'"  *Moore*, 916 F.2d at 1136 (quoting *United States v. Miller*, 722 F.2d 562, 566 (9th Cir. 1983)); *see also Walker*, 922 F.3d at 249 ("To ensure the existence of sound reasons for rejection of a plea agreement, and to facilitate appellate review, the rejection and its justification should be on the record.").

First and foremost among the relevant factors, the court must "weigh whether the plea agreement is in the public interest."  *Walker*, 922 F.3d at 250 (citing *In re Morgan*, 506 F.3d 705, 712 (9th Cir. 2007); *see also Moore*, 916 F.2d at 1136 (holding that the district court "may reject a plea 'if [it] has reasonable grounds for believing that acceptance of the plea would be contrary to the sound administration of justice'") (quoting *United States v. Severino,* 800 F.2d 42, 46 (2d Cir.1986)).  That assessment "should be predicated on the circumstances of the case," *Ibid.*, and not a conceptual antipathy to plea bargaining in general.

### A.

The proposed plea agreement in this case contains broad and comprehensive waivers of the traditional rights to appeal convictions and sentences, and waivers of the right to collateral review on most grounds.  Under the circumstances of this case, those provisions are contrary to the sound administration of justice.

A defendant may waive his right to appeal by means of a plea agreement.  *United States v. Smith*, 960 F.3d 883, 886 (6th Cir. 2020).  The scope of permissible appeal waivers, however, is not unlimited.  Rather, to defend the legitimacy of a waiver of rights, "the government [must point]

to [some] legitimate criminal-justice interest [that would be] served" by tolerating the waiver. *Price v. U.S. Dep't of Justice Attorney Office*, 865 F.3d 676, 681 (D.C. Cir. 2017).

The only "legitimate criminal-justice interest" the government has identified to support the waivers in this case is finality. That by itself is not a sufficient justification for the broad waivers it insists upon. As the D.C. Circuit explained, some rights are never subject to waiver by plea bargaining regardless of the benefit in "finality" that might be thereby achieved. *Price*, 865 F.3d at 682 (criticizing "FOIA waivers [that] promote finality only by making it more difficult for criminal defendants to uncover exculpatory information or material showing that their counsel provided ineffective assistance," noting that the government's "argument takes the finality interest too far."). "Appellate waivers are meant to bring finality to proceedings conducted in the ordinary course, but they are not intended to leave defendants totally exposed to future vagaries (however harsh, unfair, or unforeseeable)." *Cabrera-Rivera*, 893 F.3d at 23.

1.

"To be valid . . ., the waiver [of the right to appeal] must be both knowing and voluntary." *Smith*, 960 F.3d at 886. However, the waiver of the right to appeal, and more so the right to collateral review, is problematic "because appellate waivers are made before any manifestation of sentencing error emerges." *United States v. Cabrera-Rivera*, 893 F.3d 14, 23 (1st Cir. 2018) (quotations omitted). As an initial matter, the sweeping scope of the waiver here makes it questionable whether the waiver can be fully knowing, since, as amicus counsel points out, it could be construed to bar the defendant from seeking relief based on rights that have not yet even been recognized by the law. For example, future legislation may relieve the defendant of the burdens of the mandatory sentences the government seeks to enforce in this case, as has occurred in the recent past. *See, e.g.*, First Step Act of 2018, § 404, Pub. L. No. 115-391, 132 Stat. 5194. Supreme

Court decisions made retroactive could also afford relief from the penalties Townsend faces as a career offender or under the firearm-carrying statute. *United States v. Davis*, --- U.S. ---, 139 S. Ct. 2319 (2019) (holding that 18 U.S.C. § 924(c)(3)(B) is unconstitutional). Likewise, the Supreme Court could invalidate certain sentencing practices, as in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (invalidating enhancement of statutory maximum penalties on the basis of judge-found facts), and *Alleyne v. United States*, 570 U.S. 99 (2013) (same for statutory mandatory minimum penalties). And challenges to the validity of certain Sentencing Guideline enhancements may find favor. *See United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

The waiver language here is particularly problematic because it is not apparent how the Court — or anyone else — adequately and fully could explain to the defendant what specific grounds might warrant a challenge to his convictions or sentences, where the waiver purports to waive future as well as present grounds for challenge, and "any grounds" that may be at present entirely unknown and unsuspected by the defense, such as unlawful concealment of exculpatory evidence by the prosecution. As a consequence, the waiver of "the right to appeal a sentence that has yet to be imposed at the time [the defendant] enters into the plea agreement . . . is inherently uninformed and unintelligent." *United States v. Melancon*, 972 F.2d 566, 571 (5th Cir. 1992) (Parker, J., concurring).

2.

Appeal waivers of the breadth the government seeks to impose in this case also insulate from judicial oversight the government's plea-bargaining practices. That creates a systemic

problem, since the waivers now have been included in all plea agreements as an office-wide policy in this district.  But it poses specific problems in this case as well.

No longer restrained by the Holder Policy, *see* https://www.justice.gov/sites/default /files/oip/legacy/2014/07/23/holder-memo-charging-sentencing.pdf (last visited Feb. 24, 2021), the government charged Townsend with crimes that carry substantial mandatory minimum sentences, one of which would be consecutive to all other sentences, and sought to exert additional guilty-plea-inducing leverage by filing a penalty enhancement information under 21 U.S.C. § 851. The use of a prior felony information in this manner, despite its obvious effectiveness in this case, departs from Congress's intended purpose of allowing federal prosecutors the flexibility to "carefully cull from the large number of defendants with prior drug felony convictions the hardened, professional drug traffickers who should face recidivism enhancements upon conviction."  *United States v. Kupa*, 976 F. Supp. 2d 417, 419 (E.D.N.Y. 2013) (footnote omitted), *aff'd,* 616 F. App'x 33 (2d Cir. 2015).  It was never intended as a tool to coerce a guilty plea.  *See ibid.* ("To coerce guilty pleas, and sometimes to coerce cooperation as well, prosecutors routinely threaten ultra-harsh, enhanced mandatory sentences that *no one* — not even the prosecutors themselves — thinks are appropriate.  And to demonstrate to defendants generally that those threats are sincere, prosecutors insist on the imposition of the unjust punishments when the threatened defendants refuse to plead guilty.") (footnote omitted).  The appeal and collateral review waivers in the proposed plea agreement, if accepted, would shield this practice from all appellate review and judicial oversight.

Aside from potential government misconduct, the appeal and collateral review waivers would deprive Townsend of the right to correct any errors that might occur in his sentence.  Judges, lawyers, and probation officers are not infallible.  Mistakes in calculating a sentencing guideline

range can have a profound effect on a defendant's sentence — one that otherwise can be overturned on appeal. *Gall v. United States*, 552 U.S. 38, 51 (2007) (holding that when a sentence is appealed, the appellate court "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range"); *United States v. Anderson*, 526 F.3d 319, 323 (6th Cir. 2008) ("A sentence will be found procedurally unreasonable when the district court failed to accurately calculate the sentencing recommendation of the United States Sentencing Guidelines."). Trial courts rarely have the last word on disputed matters of law that could profoundly affect a defendant's liberty. That is why it is well accepted that, "at bottom, the right to appeal in criminal cases is of fundamental importance." *Melancon*, 972 F.2d at 577 (Parker, J., concurring); *see generally Griffin v. Illinois,* 351 U.S. 12, 18-19 (1956) (recognizing the fundamental fairness role that the appellate review process plays in the criminal justice system); *Douglas v. California,* 372 U.S. 353 (1963); *cf. Ross v. Moffitt,* 417 U.S. 600 (1974); *see also Arrastia v. United States,* 455 F.2d 736, 739 (5th Cir.1972) ("[The right to a direct appeal] is a right which is fundamental to the concept of due process of law.").

Another problem with the appeal and collateral review waiver in this case, and with the government's insular policy in this district generally, is that the wholesale foreclosure of appellate review distorts and inhibits the development of the Sentencing Guidelines, contrary to Congress's intention. Congress has directed that the Sentencing Commission "periodically shall review and revise, in consideration of comments and data coming to its attention, the [sentencing] guidelines." 28 U.S.C. § 994(o). Since 1987, the Sentencing Commission had engaged in "continuing review" and revision of the guidelines based on "application experience." *See* U.S.S.G. § 1.A.2 (2019). As *amicus* has noted, "that 'application experience' is distorted by appeal waivers that leave sentencing errors uncorrected." ECF No. 39, PageID.170 (citing Nancy J. King and Michael E.

O'Neill, *Appeal Waivers and the future of Sentencing Policy*, 55 Duke L.J. 209, 251 (2005) ("When appellate correction is bought and sold in some cases but not others, Congress, the Commission, and the courts that develop and interpret sentencing law are left with an incomplete picture of the extent and frequency of compliance.")).

The distortion is aggravated by the unilateral nature of the appeal waiver in this case. Congress intended that both the defendant and the government would be permitted to appeal a criminal sentence.  18 U.S.C. § 3742(a), (b).  Under the proposed plea agreement in this case, the defendant could not appeal a suspected guideline calculation mistake, but the government is free to do so.  That inevitably will lead to "systemic distortion" and "skewed case law, . . . contrary to 'the symmetry Congress intended [to create with] Section 3742.'"  *United States v. Perez*, 46 F. Supp. 2d 59, 69 (D. Mass. 1999) (citation omitted).  Countenancing that blanket policy "would mean that every Sentencing Guideline case [from this district] considered by the courts of appeals would be a case brought by the government to correct errors that favor defendants.  The appellate courts would never again decide a sentencing case brought by a defendant."  *United States v. Raynor*, 989 F. Supp. 43, 46 (D.D.C. 1997).

The appeal and collateral review waivers proposed by the government in this case are not in the public interest.

B.

The government (and nominally, the defendant) argues that rejection of the plea agreement would thrust the Court impermissibly into the plea-bargaining process.  That plainly is incorrect. Rule 11 permits the government and the defendant to "discuss and reach a plea agreement," noting that "[t]he court must not participate in these discussions."  Fed. R. Crim. P. 11(c)(1).  Nothing of the sort has occurred in this case.

The Sixth Circuit has held that a district judge trenches upon Rule 11's plea-participation injunction when "the court clearly endeavored to facilitate a plea." *United States v. Perez-Yanez*, 511 F. App'x 532, 536 (6th Cir. 2013).  That occurs when the court suggests a possible sentence and comments on the merits of potential defenses, *ibid.* (citing *United States v. Barrett,* 982 F.2d 193, 194 (6th Cir. 1992), comments on the government's evidence and the strength of its case, *ibid.* (citing *United States v. Bradley,* 455 F.3d 453, 462 (4th Cir. 2006)), or suggests the penalties that would apply if the defendant pleaded guilty or proceeded to trial, *ibid.* (citing *United States v. Casallas,* 59 F.3d 1173, 1177 (11th Cir. 1995)).  In contrast, "a district court [does] not improperly participate in plea negotiations where there was 'no indication in the record that [the court] had discussions with counsel concerning the facts of [the defendant's] case, any aspect of sentencing, or [the defendant's] possible guilt or innocence.'"  *Ibid.* (quoting *United States v. Rankin,* 94 F.3d 645, 1996 WL 464982, at *2 (6th Cir. 1996) (*per curiam*)).

When presented with an unacceptable plea agreement, the Court's prerogative is to reject it *in toto*.  The Court makes no effort to suggest terms that would be acceptable, or to excise the offending provisions and exercise a "judicial line-item veto."  *See United States v. Serrano-Lara*, 698 F.3d 841, 844-45 (5th Cir. 2012) (holding that the district court has discretion to reject a plea agreement and state the reasons for doing so, but "a court choosing to accept a plea agreement does not then have the option to perform a judicial line-item veto, striking a valid appeal waiver or modifying any other terms").  And by suggesting acceptable terms, the Court does not necessarily insert itself impermissibly into the plea discussions.  For instance, the Court "may always consider whether a plea agreement is 'too lenient,' in light of the defendant's criminal history or the relevant offenses," and it also may "reject a plea agreement that it sees as too harsh." *Walker*, 922 F.3d at 250.

The rejection of the parties' proposed plea agreement here is well within the Court's authority.  *See* Fed. R. Crim. P. 11(c)(5).

The government also argues that rejecting the plea agreement would cause Townsend "extreme prejudice" and compromise his interests.  However, the only interest to which it alludes is the defendant's "interest" in not going to trial and facing double the mandatory penalty.  But the prospect of trial is not, in itself, "prejudicial" to the defendant; it is the inevitable outcome of every criminal proceeding that is not resolved by other means.  The prospect of trial is the hazard that the defendant faces *because the government chose to charge him*, not because the Court chooses to accept or reject a proposed plea agreement on any particular terms.  Other than the defendant's interest in lowering his sentence exposure, the government has not identified any legitimate criminal justice interest that is served by the defendant's waiver of "all rights" to appeal or collateral challenge, without exception or limitations.

Finally, the temptation for the defendant to accept an unworkably broad and preclusive waiver is especially acute here, in that by doing so he reduces by half the mandatory prison term that he would face if he accepts a conviction by pleading guilty rather than being convicted by a jury.  In the face of that extreme incentive for the defendant to forfeit all prospective rights to relief from his convictions and sentences, the Court must be especially concerned about the hazard to the fair administration of justice that is posed by the attempted complete isolation of executive branch conduct from any effective judicial review.  "When judicial process and executive prerogative conflict, courts must 'resolve those competing interests in a manner that preserves the essential functions of each branch.'"  *United States v. Slone*, 969 F. Supp. 2d 830, 837 (E.D. Ky. 2013) (quoting *United States v. Nixon*, 418 U.S. 683, 707 (1974)).  In this case, the executive's attempt to isolate itself from all judicial scrutiny by proposing an offer that is simply "too good to

refuse" is particularly concerning in light of the compelling public interest in ensuring that adequate checks and balances are maintained between the branches, and that the safeguards inherent in judicial scrutiny of all phases of criminal proceedings are not eroded.

III.

The proposed plea agreement in this case is contrary to the public interest in the fair administration of justice, and the government has failed to identify any discernible substantial criminal justice interest that is achieved by the overly broad waivers on which it insists.

Accordingly, it is **ORDERED** that the joint motion to accept the plea agreement (ECF No. 36) is **DENIED**.

It is further **ORDERED** that the parties must appear for a final pretrial conference **on April 14, 2021 at 10:00 a.m.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   March 1, 2021